```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

           v.                            11 CR 1068 (PKC)

LEIB GLANZ,

           Defendant.

------------------------------x
                                         New York, N.Y.
                                         February 28, 2013
                                         2:25 p.m.

Before:

              HON. P. KEVIN CASTEL,

                                         District Judge

                     APPEARANCES

PREET BHARARA,
     United States Attorney for the
     Southern District of New York
JUSTIN ANDERSON
     Assistant United States Attorney

COVINGTON & BURLING LLP
     Attorneys for Defendant
ALAN VINEGARD
MARY BONTHUIS

ALSO PRESENT:  ROBYN MICHAELSON, USAO Intern
```

(In open court)

THE DEPUTY CLERK:  United States of America versus Leib Glanz.  Government ready?

MR. ANDERSON:  Yes.  Justin Anderson for the government.  I'm joined at counsel table by Robyn Michaelson, who is an intern at the office and a student at Fordham.  Good afternoon, your Honor.

THE COURT:  Good afternoon to both of you.

THE DEPUTY CLERK:  For the defendant?

MR. VINEGRAD:  Alan Vinegrad and Mary Bonthuis for the defendant.

THE COURT:  Good afternoon.  Always good to see you, Mr. Vinegrad.  And good afternoon, Mr. Glanz.

Mr. Vinegrad, what I want to do is go through the materials that I have, and the question that I will be asking you is whether I have everything I should have.

I have a presentence report, recommendation and addendum approved by probation on January 15th, 2013; I have a letter from you dated January 11, 2013, regarding the issue of redactions; I have a memorandum from you dated January 11, 2013; and I have an exhibit volume with 79 exhibits to it, which came with the January 11 submission; I also have a February 25th, 2013 letter from you with attachments.

Do I have everything I should have on the subject of sentencing?

1     MR. VINEGRAD:  Yes, sir.
2     THE COURT:  Has the defendant in fact read, reviewed
3  and discussed with you the presentence report, recommendation
4  and addendum?
5     MR. VINEGRAD:  Yes, he has.
6     THE COURT:  From the government's standpoint, do I
7  have everything I should have on the subject of sentence?
8     MR. ANDERSON:  Yes, your Honor.
9     THE COURT:  Mr. Vinegrad, does the defendant have any
10  objections to the facts set forth in the presentence report?
11     MR. VINEGRAD:  No, your Honor.
12     THE COURT:  Does the government have any objections to
13  the facts set forth in the presentence report?
14     MR. ANDERSON:  No, your Honor.
15     THE COURT:  I adopt as my findings of fact the facts
16  set forth in the presentence report.
17     With regard to the guideline calculation in the
18  presentence report, does the defendant have any objections to
19  the guideline calculation?
20     MR. VINEGRAD:  No, we do not.
21     THE COURT:  Same question for the government?
22     MR. ANDERSON:  No, Judge.
23     THE COURT:  Based upon my independent review, I
24  conclude that the guidelines were correctly calculated.
25     I'm going to give Mr. Vinegrad an opportunity to

speak, and then I'm going to give Mr. Glanz an opportunity to speak, and finally the government can speak. But what I want the government to do first is, I want the government to lay out the structure of the offense, how it worked, where the money went, who was the beneficiary of the money, and what the government's understanding of the defendant's role with the landlord at the time -- I understand the defendant was the tenant but also had a role with the landlord. So if you could outline the role in the offense, I think it might give Mr. Vinegrad an opportunity to see if he agrees or not, and it will also frame the discussion.

MR. ANDERSON: Your Honor, in the mid-'90s, the defendant's brother, Menashe Glanz, who was before the Court last week, had been receiving Section 8 housing benefits for a number of years, but he apparently needed to move to a bigger house and moved into a home that was not eligible for Section 8 housing benefits. So at that point, in the mid-'90s -- this was '95 or '96 -- he asked his brother to use the house that his brother was living in as the residence for which Section 8 housing benefits would be obtained.

THE COURT: Wait. I've lost you at that point. Menashe asked Leib if what?

MR. ANDERSON: If he could use his address.

THE COURT: Use Leib's address?

MR. ANDERSON: Right, which is a Section 8-eligible

apartment in an application to receive Section 8 housing benefits because the apartment Menashe was living in at the time was moving to at the time, was not itself eligible for Section 8 housing benefits. So in order to continue to receive the benefits, he used his brother's address on the applications.

Now, that was 1996. The landlord for the apartment where the defendant, Leib Glanz, lived, and continues to live, was UTA. And the defendant also worked at UTA as the executive director...

THE COURT: The executive director of operations, was it?

MR. ANDERSON: I believe it was an executive position. I can't recall the title, but it's to that effect. He was the administrator of UTA.

And among his responsibilities or at least a responsibility he was able to assume was the approval on behalf of UTA, the property owner, of the Section 8 housing agreement. So that's the agreement with the government pursuant to which the subsidy is paid to the landlord, UTA, for the housing.

In this case, it's Menashe's application. The housing is the apartment where the defendant, Leib Glanz, lived. And the application was approved by Leib Glanz on behalf of the landlord, UTA, his employer.

THE COURT: And then the checks went where?

6
D2skglas

MR. ANDERSON:  To UTA.  And it's my understanding that there was a benefit to Menashe but not to Leib through UTA.

THE COURT:  And what was that benefit?

MR. ANDERSON:  I believe it's reduction in tuition for his children.

THE COURT:  So the government's theory of the case is that Leib's employer, the organization of which he was the executive director, benefited from this scheme?

MR. ANDERSON:  I'd say his brother benefited from the scheme more, because the employer was entitled to the tuition one way or the other, was entitled to be compensated one way or the other.  So the principal beneficiary was Menashe Glanz, but I take the Court's point, which is, yes, it also allowed the school to obtain a benefit that it might otherwise not have been able to obtain directly from Menashe.

THE COURT:  All right.  Thank you.

Mr. Vinegrad, this is your opportunity to speak.

MR. VINEGRAD:  On that issue or generally?

THE COURT:  Generally, anything; that issue and also generally.

MR. VINEGRAD:  Well, let me just start with that, and then I just really want to address the Court for a couple of minutes generally.

I pretty much concur with counsel's description of the offense and who financially benefited and who didn't.  I guess

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  I would place more emphasis on the portion that my client's
2  brother benefited, is really where I think all of this came out
3  as opposed to the school, to the extent that the financial
4  benefit of the Section 8 subsidy was passed on in the manner
5  that Mr. Anderson described, to Menashe.  But otherwise, I
6  think the description was a fair one.  The point we made in our
7  correspondence to the Court was that my client's involvement
8  was limited to that period from the mid-1990s to 2000, when he
9  left UTA.
10            I will tell your Honor that standing here now
11  representing Rabbi Glanz in this proceeding is not a place that
12  I thought I'd ever be.  I have known him for over 20 years, and
13  I have learned more about him and his life history as a result
14  of this case.  And I am hard pressed to think of a person whose
15  life is more completely devoted to the betterment of others
16  than he.  Whether it be for a relative or a friend or even a
17  complete stranger, Rabbi Glanz goes out of his way to help
18  people and oftentimes in extraordinary ways -- welcoming people
19  to his home for days or weeks or even months or years at a
20  time, providing medical help and comfort to the sick and the
21  injured and the dying, helping to provide sustenance and
22  support to the needy, helping people cope with some of the most
23  serious and personal and heart-wrenching crises and tragedies
24  of their lives, giving his time and his energy and his heart to
25  improving the lives of other people, and devoting himself day

in and day out for many, many years to the care of his wife, who depends heavily on him for both physical and emotional support in ways that are described in the letters we've submitted to your Honor.

These are not the good deeds of an ordinary defendant or an ordinary person. I submit they are truly breathtaking in scope and in degree. In fact, it is no overstatement to say that Rabbi Glanz, during the course of his life, has literally helped save the lives of countless other people. This history of conduct that I have described defines him as a person. It is the essence of who he is, which is why it's so surprising, and for the rabbi so painful, that he appears in this courtroom before your Honor today. He understands very well that by doing what he did, he failed himself and others, and through his conduct in this case, in this prosecution, he has tried, as best as he can, to make amends for that.

The probation department correctly, in our view, has recommended a sentence of probation and a fine. And what's noteworthy about that, your Honor, is, they made that recommendation without knowledge of the truly extraordinary things that Rabbi Glanz has done throughout his life -- things that are described in detail in the dozens of letters that we have submitted to this Court. No departure and no variance is required in this case to impose that sentence, although the facts, I submit, would certainly justify that.

            And so, your Honor, I respectfully request that, based
on the nature of the offense of conviction, the rabbi's
acceptance of responsibility, the guideline range, his lack of
a prior record or risk of recidivism, his truly exceptional
lifelong history of charitable deeds and good works, his
unusual family responsibilities, particularly to his wife, and
in light of the acute shame and public humiliation that he
already has suffered and will continue to suffer, I submit that
a sentence of probation reflects an appropriate balancing of
the factors that your Honor is required to consider in imposing
a sentence.  And, thus, I ask your Honor to impose that
sentence in this case.

            THE COURT:  Thank you, Mr. Vinegrad.

            Leib Glanz, this is your opportunity to addressing the
Court directly, to bring to my attention any facts or
circumstances that you believe I should take account of in
passing sentence upon you today.  If there's anything you wish
to say, this is the time to say it.

            You can do it from your seat, sir.  You can stand if
you are more comfortable, that's fine, but you can do it from
there.  Thank you.

            THE DEFENDANT:  Your Honor, all my life -- all my life
I have tried to do only what's good.  I have tried to help
many, many people, but in this case I have not lived up to my
standard.  I said yes when I should have said no.  By doing

1 that, I have failed myself, I have failed many people. I know
2 that even when this case is over, I will have to live with my
3 pain and with the embarrassment that I have caused with what I
4 did. I truly am sorry for what I did, your Honor. I take
5 responsibility for what I did, and I can assure your Honor that
6 I have learned my lesson for a long time. I thank you and may
7 God bless you.
8             THE COURT:  Thank you.
9             This is the government's opportunity to speak if it
10 wishes.
11            MR. ANDERSON:  Your Honor, unless the Court has any
12 questions, I don't have anything further to add.
13            THE COURT:  All right.
14            This is the Court's statement of reasons for the
15 sentence to be imposed on Defendant Leib Glanz:  In sentencing
16 the defendant, I have considered each of the materials that I
17 referenced at the outset, including the volume of letters,
18 which quite notably had a very touching letter, which amounted
19 to something of a short overview of the life history of the
20 defendant's father, which I found of particular interest, and
21 many instances of letters from people for whom the defendant
22 did good deeds, charitable deeds, charitable works.  There is a
23 letter, a thoughtful letter, of support from the Grand Rabbi of
24 Satmar, which I have noted.
25            I have considered Mr. Vinegrad's very thoughtful

written comments and oral comments today, and I have considered the sincere statement of the defendant as well as the government's overview of the offense.  I've considered each of the factors set forth in the sentencing statute, which is known as Section 3553(a).  I've considered each of the factors, even though I will not recount each of them in my discussion here this afternoon, although I may comment on some of that.

With regard to the nature and circumstances of the offense, the defendant has pled guilty to the following:  From January 18, 1996 through June 7, 2000, Leib Glanz made false statements to the U.S. Department of Housing and Urban Development regarding the contracts for federal housing subsidies in connection with a scheme to fraudulently obtain approximately $36,000 in such subsidies.

The manner in which the scheme operated was described by the government this afternoon and is set forth in paragraphs 16 and 17 of the presentence report.  During the period of the offense, the defendant was the executive director of the United Talmudical Academy in Brooklyn -- UTA -- and during that time period he signed three contracts with the New York City Housing Authority, which administered the Section 8 housing assistance program.

The contracts stated that the payments would be made to UTA on the basis that his brother, Menashe, and his family were tenants of the apartment owned by UTA, and that statement

was false. And Mr. Glanz knew it was false because he knew his brother and his brother's family were not tenants in that apartment.

I've considered the history and characteristics of the defendant. The defendant is 54 years of age, married, well educated, and a person who has rendered many good deeds to members of his community and also to persons outside his community. He suffers from high blood pressure and diabetes. And he grew up in a courageous family and studied hard to get to where he rose, as an ordained rabbi. From 2000 to 2009, he was employed as an administrative chaplain by the New York City Department of Corrections.

I've considered the need to impose just punishment to deter this defendant from further crimes and to deter others from similar crimes. In this instance, I do not believe that this defendant will reoffend, so I don't put much weight on the need to protect the public from further crimes of this defendant in order to deter this man from committing this crime again. But there remains the question of just punishment and deterring others from crimes of this type.

Section 8 subsidies are not free money. They exist at the sufferance of the citizenry and those who pay taxes. The support for this government program and other government programs is undermined when there is cheating, stealing, from the program. That causes people to say, "I do not want to vote

1     for people who will support or continue such programs."

2              Further, it must be understood that if you cheat and
3     steal in this fashion, or lie in the case of this defendant, to
4     enable someone else to cheat and steal, that when you're caught
5     there will be some penalty that you pay -- you have to pay some
6     kind of a fine, you have to pay some money back -- and then the
7     score is even.  This is a crime, this is worthy of just
8     punishment, and punishment is intended to sting, to impose
9     something unpleasant, which causes other persons not to want to
10    do the deed.  It is not a means of simply rolling back the
11    clock to where one was before the fraud.  That can't be done.

12             So my challenge here is to come up with a sentence
13    which is specific to this individual, which takes into account
14    the good deeds of his life, his family responsibilities, yet is
15    sufficient to deter others from crimes of this nature.  That's
16    not an easy task.  In sentencing the defendant, I've considered
17    the policy statements, official commentary, and guidelines of
18    the United States Sentencing Commission.  I recognize that they
19    only have advisory weight and they are not binding on the
20    Court.  I acknowledge that I have variance discretion.

21             In this case, with a statutory provision which permits
22    the Court to impose custody of up to one year and a guideline
23    provision which ranges from zero to six months' imprisonment,
24    and a fine in the range of 3,000 to 30,000 dollars, I conclude
25    that a sentence of 45 days' imprisonment, one year supervised

1     release, a fine of $3,000, and the imposition of a special

2     assessment of $25 is sufficient but not greater than necessary

3     to achieve the purposes of Section 3553(a).

4             Does the defendant or his counsel have any objection

5     to the Court's proposed sentence or to the statement of reasons

6     for that sentence?

7             MR. VINEGRAD:  Judge, the only thing I would very

8     respectfully ask the Court, is that particularly in light of

9     the defendant's, what I think are very unusual, if not unique,

10    family responsibilities, particularly to his wife, who he

11    really is the caregiver, and has been day in and day out for

12    decades, I would respectfully ask your Honor to consider as an

13    alternative to 45 days' imprisonment, 45 days of home

14    confinement.  Make him a prisoner of his own home.  That will

15    have a severe limitation on this man, whose life is essentially

16    spent, if not behind a desk from 9:00 to 5:00 but here and

17    there, running around everywhere, that truly will be making him

18    a prisoner of his own home, with whatever restrictions attend

19    that, but will allow him to carry out his unique family

20    responsibilities in a way that really no one else can.  I would

21    very humbly, respectfully ask your Honor to consider that

22    alternative.

23            THE COURT:  Thank you, Mr. Vinegrad.

24            The Court has carefully considered whether home

25    confinement in this case, such as home confinement for 45 days,

1     would deter others and amount to just punishment in this case.
2     And, most respectfully, I do not believe it would.  And so I
3     intend to impose the sentence which I've stated.
4              Does the government have any objections to the Court's
5     proposed sentence or to the statement of reasons for the
6     sentence?
7              MR. ANDERSON:  No, I do not, your Honor.
8              THE COURT:  All right.  The defendant will please
9     stand and I will impose sentence.
10             Leib Glanz, it is the judgment of this Court, that you
11    are hereby remanded to the custody of the United States Bureau
12    of Prisons to be imprisoned for 45 days.  Following release
13    from imprisonment, you shall be placed on supervised release
14    for one year, with the following terms and conditions:  You
15    shall not commit another federal, state or local crime, nor
16    illegally possess a controlled substance, nor possess a firearm
17    or destructive device.  The mandatory drug testing condition is
18    suspended based on the Court's determination that you pose a
19    low risk of future substance abuse.  You shall cooperate with
20    the collection of DNA as directed by the probation officer.
21    The standard conditions of supervision 1 through 13 are
22    imposed.
23             You shall report to the nearest probation office
24    within 72 hours of release from custody, and you may be
25    supervised in the district of your residence.  You shall

1  further pay to the United States a special assessment of $25,
2  which shall be due immediately.
3      Based upon consideration of your assets and your
4  earning ability, a fine of $3,000 shall be paid in full 90 days
5  from the date of the judgment.
6      Does the government agree that restitution has already
7  been fully made in this case and no need for restitution
8  exists?
9      MR. ANDERSON:  I agree, your Honor.  Is it worthwhile
10  noting in the judgment that restitution was ordered and that it
11  has already been satisfied at the time of sentencing so that
12  there is a record that restitution was ordered and has been
13  made?
14      THE COURT:  Any objection to that?
15      MR. VINEGRAD:  No, your Honor.
16      THE COURT:  OK.
17      It is further ordered that the defendant make
18  restitution payable to the Clerk, U.S. District Court, 500
19  Pearl Street, for disbursement to New York City Housing
20  Authority in the amount of $36,484.  The amount of restitution
21  has been paid as of today.
22      And if I didn't say it before -- I think I did, I'll
23  say it again -- it is further ordered that the defendant shall
24  pay to the United States a special assessment of $25, which
25  shall be due immediately.

            Mr. Glanz, you have the right to appeal the sentence
that has been imposed on you.  If you cannot afford the cost of
an appeal, you may apply for leave to appeal as a poor person.
The time limits for filing a notice of appeal are brief, and
they're strictly enforced.  If you request, the Clerk of Court
will prepare and file a notice of appeal on your behalf
immediately.
            Do you understand all of that?
            THE DEFENDANT:  Yes, your Honor.
            THE COURT:  All right.  Please be seated.
            Is there anything further from the government?
            MR. ANDERSON:  Yes, your Honor.  The defendant was
charged in an underlying indictment, which the government now
moves to dismiss.
            THE COURT:  All right.  Without objection, that is
granted.
            And Mr. Vinegrad, do you have a proposal on surrender
date?
            MR. VINEGRAD:  Voluntary surrender, I would suggest 45
days from today.
            THE COURT:  All right.
            MR. VINEGRAD:  With permission to come back to the
Court if by that day there is not a designated institution to
which he can directly report?
            THE COURT:  I don't think there is going to be a

1  designated institution.  I don't know but I would think it
2  would be the MCC or the MDC but I could be wrong about that.
3              MR. VINEGRAD:  Understood.
4              THE COURT:  So I'm going to direct that the defendant
5  surrender to the United States Marshal for the Southern
6  District of New York on or before 2:00 p.m. on Tuesday,
7  March 16, 2013.
8              MR. VINEGRAD:  April?
9              THE COURT:  Thank you very much.  April 16, 2013,
10 2:00 p.m.
11             Do you understand that, Mr. Glanz?
12             THE DEFENDANT:  Yes, your Honor.
13             THE COURT:  All right.
14             So you must surrender to the United States Marshal for
15 the Southern District of New York on April 16th at 2:00 p.m. or
16 before that time, or you will be guilty of a separate crime,
17 failure to surrender and subject to a penalty of up to five
18 years in prison and a fine of up to $250,000 in addition to the
19 punishment imposed upon you today.
20             Mr. Vinegrad, with regard to the redactions, I think
21 your proposal is fine, and it is approved.  Have you filed the
22 redacted copy on the docket?
23             MR. VINEGRAD:  Yes.
24             THE COURT:  All right.  I think that's all that is
25 necessary in this case, then, if you filed the redacted copy.

1        Let me say to the defendant:  You have led a good
2   life.  You will continue to live a good life, you will continue
3   to do good deeds, I strongly suspect, and you will put this
4   chapter behind you.  And I suspect that it is in fact the case
5   that there is wisdom that has been gained from this experience.
6        I wish you and those around you the very best.  We are
7   adjourned.
8                              * * *